UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANTHONY VERDIN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | No. 12-2979 |
| | * | |
| TRA-LYNN HARTMAN, ET AL. | * | SECTION "L" (5) |

## ORDER AND REASONS

Before the Court is Plaintiff Anthony Verdin's Motion to Remand. (Rec. Doc. 7). The Court has reviewed the documents and applicable law and, having heard oral argument on the motion, now issues this order and reasons.

I.     BACKGROUND

On November 5, 2012, Plaintiff Anthony Verdin filed a complaint in the Civil District Court for the Parish of Orleans, State of Louisiana. In his complaint, Verdin alleges that on or about November 3, 2011, Defendant Tra-Lynn Hartman was driving a vehicle in which Verdin was a passenger. (Rec. Doc. 1 at 7). According to Verdin, Hartman was negligently utilizing her cellular telephone when she lost control of the vehicle and crashed into the railing of an interstate on-ramp. (Rec. Doc. 1 at 7). Verdin alleges that he sustained injuries to his neck, back, arm, shoulder, and leg. (Rec. Doc. 1 at 8). Verdin asks for a judgment against Hartman and Hartman's automobile insurance company, Allstate Insurance Company ("Allstate"), for all costs, general damages, specific damages, and other equitable relief. (Rec. Doc. 1 at 8). On December 17, 2012, Defendant Allstate, in its capacity as the liability insurer of Hartman, removed the case to this Court. In its Notice of Removal (Rec. Doc. 1), Allstate alleges that this Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332 because the amount in

1

controversy exceeds $75,000 and there is diversity of citizenship between the parties.

## II.     PRESENT MOTION

On January 14, 2013, Verdin filed a Motion to Remand. (Rec. Doc. 7). Verdin claims that Allstate failed to submit any evidence that the amount in controversy exceeded $75,000. (Rec. Doc. 7 at 1). Furthermore, Plaintiff claims that Hartman is a citizen and domiciliary of Louisiana, therefore, complete diversity of citizenship does not exist in this case. For these reasons, Verdin argues that this Court does not have jurisdiction pursuant to 28 U.S.C. § 1332. (Rec. Doc. 7 at 2).

On May 1, 2013, this Court heard oral argument on the motion. (Rec. Doc. 20). At the outset, the Court explained to the parties that it was satisfied that the amount in controversy requirement had been met in this case. The Court examined the medical bills, which alone added up to $44,000, and determined that the amount in controversy totaled more than $75,000. Subsequently, the parties stipulated that the amount in controversy exceeded $75,000. (Rec. Doc. 42-1 at 24). However, the Court decided that a deposition of Hartman was necessary to determine her state of citizenship. The Court ordered the parties to conduct a limited deposition of Hartman regarding the jurisdictional issue.

The Court held telephone status conferences on September 12, 2013, October 2, 2013, and October 15, 2013. Despite counsels' constant reassurance that a deposition of Hartman was going to take place in the coming weeks, a deposition of Hartman was never taken. During the telephone status conference on October 15, 2013, the Court explained that counsel would have 10 days to take the deposition, after which time the Court would rule on the motion based on the information before it. Because a deposition of Hartman was never taken, the Court will now rule on the motion based on the information currently in the record.

2

### III.      LAW & ANALYSIS

#### A.    Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If a federal court would have had original jurisdiction, a defendant may generally remove the case to federal court. In the present case, Allstate asserts that this Court has original jurisdiction over the suit pursuant to 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…citizens of different States." The removing party bears the burden of establishing that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)). "To determine whether jurisdiction is present for removal, [the court should] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute should be strictly construed in favor of remand. *Id*. (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)). The only jurisdictional issue remaining in this case is whether diversity of citizenship existed at the time of removal.

To decide whether diversity jurisdiction exists, the Court must determine in which state the parties are domiciled. *See Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.*, 485 F.3d 793, 797-98 (5th Cir. 2007). A party's domicile serves as his state of citizenship. *Id.* (citing *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). "[T]he question of a person's

domicile is a matter of federal common law." *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003) (citing *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996)). In *Acridge v. Evangelical Lutheran Good Samaritan Society*, the Fifth Circuit provided a thorough explanation of how a person's domicile can change:

> A person acquires a "domicile of origin" at birth, and this domicile is presumed to continue absent sufficient evidence of change. There is a presumption of continuing domicile that applies whenever a person relocates. In order to defeat the presumption and establish a new domicile (the "domicile of choice"), the person must demonstrate both (1) residence in a new state, and (2) an intention to remain in that state indefinitely.

*Id.* (citation omitted); *see also Preston*, 485 F.3d at 798 ("A person's state of domicile presumptively continues unless rebutted with sufficient evidence of change."). "[M]ere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent." *Coury*, 85 F.3d at 250. There are several factors that should be considered by a court determining a litigant's domicile.

> The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.

*Id.* at 251.

### B. Defendant Hartman's Domicile

On the first page of the complaint, Verdin describes Hartman as "a person of the full age of majority, domiciled in Scottsdale, Arizona, who at times relevant herein was the at fault driver of the motor vehicle which caused the instant auto crash." (Rec. Doc. 1 at 7). While this statement is not conclusive, it is certainly suggestive. The Court finds that this description is consistent with the facts surrounding Hartman's status at the time the complaint was filed and at

4

the time that it was subsequently removed to this Court.

Hartman was born and raised in Louisiana. However, at some point she moved to Arizona. In her affidavit, Hartman declares that she "lived in Arizona for years off and on and established [her] domicile in Arizona in 2005 after Hurricane Katrina." (Rec. Doc. 16-1 at 1). In Plaintiff's deposition, he claims that "she moved to Arizona in 1999, actually." (Rec. Doc. 42-1 at 14). Regardless of whether Hartman moved to Arizona in 1999 or 2005, the Court finds it clear that at some point Hartman moved to Arizona and established a new domicile in that state. According to Hartman, she registered to vote in Arizona. (Rec. Doc. 16-1 at 1). She bought property in Arizona. (Rec. Docs. 16-1 at 1, 42-1 at 14). She obtained a driver's license in Arizona and still has one today. (Rec. Doc. 16-1 at 1, 42-1 at 30). She obtained Arizona car insurance and a job in Arizona (Rec. Docs. 7-2 at 6, 42-1 at 14). After evaluating these factors, as well as Hartman's own affidavit, the Court finds that she clearly established a new domicile in Arizona. Arizona was her residence and she demonstrated a clear intent to stay there.

In light of this finding, the only question for the purpose of this motion is whether, sometime before the commencement of this case, Hartman moved back to Louisiana and re-established her domicile in Louisiana. As the Court explained, "[t]here is a presumption of continuing domicile that applies whenever a person relocates." *Acridge*, 334 F.3d at 448. Therefore, once Hartman established her domicile in Arizona, she needed to demonstrate "(1) residence in a new state, and (2) an intention to remain in that state indefinitely," in order to rebut the presumption that Arizona is her domicile. *See id.* at 448. The Court finds that there is insufficient evidence to rebut the presumption that Hartman's domicile is Arizona. Both parties agree that she has lived off and on in Louisiana over the past few years. However, location itself is not sufficient. *See Coury*, 85 F.3d at 250. Plaintiff presents no evidence that in 2011 or 2012,

Hartman demonstrated an intent to stay in Louisiana indefinitely. She does not own property in Louisiana. (Rec. Doc. 16-1 at 1). There is no evidence that she has a Louisiana driver's license. When she stays in Louisiana, she stays at a home that is owned by her father. (Rec. Doc. 42-1 at 28). The bills for that address are in her father's name. (Rec. Doc. 42-1 at 33).

Plaintiff points out that the Allstate insurance policy lists a Louisiana address for Hartman and correspondence from Allstate was sent to that address in Louisiana. (Rec. Doc. 7-2 at 8). However, despite listing an address in Louisiana, Hartman obtained an Arizona Proof of Auto Insurance Card from an insurance agent located in Arizona at that same time. (Rec. Docs. 7-2 at 7, 12). Furthermore, the insurance information was faxed to her at an Arizona fax number. (Rec. Docs. 7-2 at 6). Plaintiff also points to the fact that Hartman has been registered to vote in Jefferson Parish, Louisiana since 1996. (Rec. Doc. 7-2 at 22). This is consistent with this Court's opinion that Hartman was domiciled in Louisiana prior to moving to Arizona. Plaintiff presents no evidence that Hartman has ever actually voted in Louisiana, much less in the last few years. Lastly, the Court finds Plaintiff's documents regarding transactions that took place in Louisiana in 1991 and 1995 completely irrelevant. (Rec. Doc. 7-3 at 1-23). Plaintiff's evidence fails to rebut the presumption that Hartman's domicile remains in Arizona.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Hartman is domiciled in Arizona and complete diversity does exist in this case. Accordingly, **IT IS ORDERED** that Plaintiff's Motion to Remand, (Rec. Doc. 7), is **DENIED**.

New Orleans, Louisiana, this 13th day of November, 2013.

_____
UNITED STATES DISTRICT JUDGE